IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| WANDA COUNCILL, | ) |
| Plaintiff, | ) Case No. 1:15CV00005 |
| v. | ) **OPINION AND ORDER** |
| DAMASCUS VOLUNTEER FIRE DEPARTMENT, INC., | ) By: James P. Jones |
| | ) United States District Judge |
| Defendant. | ) |

*Robert T. Copeland, Copeland Law Firm, P.C., Abingdon, Virginia, and Michael A. Bragg, Bragg Law, Abingdon, Virginia, for Plaintiff; Cameron S. Bell, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendant.*

In this personal injury diversity case, the defendant, the Damascus Volunteer Fire Department, Inc. (the "Fire Department") has filed a Motion for Summary Judgment on the ground that it is entitled to charitable immunity from suit under Virginia law. Because I find that the plaintiff was not a beneficiary of the Fire Department's charitable purposes at the time of her injury, the defendant is not entitled to charitable immunity, and the motion will be denied.

The relevant facts surrounding this issue are undisputed. The Fire Department is a 501(c)(3) tax exempt non-profit entity that offers fire fighting and rescue services to the Damascus, Virginia, community. Charitable contributions

make up a substantial portion of the Fire Department's revenues, and services are provided to all regardless of inability to pay.

In order to raise further funds, the Fire Department owns and operates a bingo hall in Damascus, which is run solely by volunteers. The bingo hall is operated pursuant to a Charitable Gaming Permit from the Commonwealth, and all proceeds of the bingo games are used for the Fire Department's charitable purposes of firefighting and rescue services. On July 13, 2012, the plaintiff, Wanda Councill, travelled from her home in Vilas, North Carolina, 32 miles away, to participate in the bingo game. She paid a fee of $50 to enter the game, and ended up winning a prize of $500. After her good fortune, Councill experienced an unfortunate turn of events outside of the building, where she tripped and was injured. She claims that her injuries are attributable to the Fire Department's negligence.

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Fire Department contends that it is entitled to charitable immunity from suit. Since jurisdiction rests on diversity of citizenship, resolution of this question is governed by Virginia law. *Egerton v. R.E. Lee Mem'l Church*, 395 F.2d 381, 382 (4th Cir. 1968). In Virginia, "the doctrine of charitable immunity 'is firmly

-2-

Case 1:15-cv-00005-JPJ-PMS   Document 18   Filed 06/01/15   Page 2 of 8   Pageid#: 64

embedded in the law of this Commonwealth and has become a part of the general public policy of the State.'" *Ola v. YMCA of S. Hampton Roads, Inc.*, 621 S.E.2d 70, 72 (Va. 2005) (quoting *Mem'l Hosp., Inc. v. Oakes*, 108 S.E.2d 388, 396 (Va. 1959)).[1] To establish charitable immunity, the defendant entity must prove two distinct elements: "First, the entity must show it is organized with a recognized charitable purpose and that it operates in fact in accord with that purpose." *Ola*, 612 S.E.2d at 72. This inquiry involves a two-part test, examining whether the organization's articles of incorporation show "a charitable or eleemosynary purpose" and whether the organization has in fact operated consistently with that purpose. *Id.* at 73 (internal quotation marks and citation omitted). Second, the entity must show that the plaintiff "was a beneficiary of the charitable institution at the time of the alleged injury." *Id.*

There is no question as to the first element. The Fire Department is a 501(c)(3) tax exempt entity, and its Articles of Incorporation clearly express that it is "organized exclusively for charitable, religious, educational, and scientific purposes." (Barlow Decl. Ex. B, ECF No. 15-3.) Further, there is no dispute that the Fire Department operates consistently with those purposes, providing fire

---

[1] Charitable immunity appears to be against the trend in other states. *See, e.g., Fitzer v. Greater Greenville S.C. YMCA*, 282 S.E.2d 230, 231 (S.C. 1981) ("The doctrine of charitable immunity has no place in today's society."); 15 Am. Jur. 2d *Charities* § 177.

fighting and rescue services to the Damascus community, regardless of financial means.

The more difficult question is whether the plaintiff, as a bingo player, was a "beneficiary" of the Fire Department at the time of her alleged injury. In Virginia, a person is a beneficiary of a charitable organization if she has a "beneficial relationship" to the organization. *Ola*, 621 S.E.2d at 77. The individual need not receive financial assistance from a charity in order to be a beneficiary of that organization, and even a person who pays the full price for services is still a beneficiary if the charity could not have provided those services without charitable contributions. *Id.* Rather, "[a]n individual is 'a beneficiary of [charitable] bounty' if that individual's interaction with the entity 'is related to the charitable purpose of the [organization].'" *Id.* (quoting *Egerton*, 395 F.2d at 384).

The Fire Department contends that it operates the bingo hall in order to raise money for its charitable purpose of providing firefighting and rescue services, and that the bingo hall is thus integral to its charitable purposes. The plaintiff paid an entry fee, participated in bingo games, and even won a substantial prize — all purported evidence that she reaped the benefits of the Fire Department's charitable activities. Further, the Fire Department argues that, under Virginia law, a plaintiff's mere presence on the premises of the charitable institution qualifies the plaintiff as a beneficiary of the charity. *See, e.g., Egerton*, 395 F.2d at 383-84

(holding that plaintiff was beneficiary of church when she visited premises to view stained glass windows, despite not being a member of the congregation); *Bodenheimer v. Confederate Mem'l Assoc.*, 68 F.2d 507, 509 (4th Cir. 1934) (holding that visitor to Confederate memorial was beneficiary of charity when she fell on sidewalk while viewing memorial).

Subsequent to these Fourth Circuit cases, however, the Virginia Supreme Court has made clear that the definition of "beneficiary" is not so broad as the Fire Department suggests.[2] Specifically, the court has held that, although "charitable institutions are immune from liability based upon claims of negligence asserted by those who accept their charitable benefits," that immunity does not extend "to invitees or strangers having no beneficial relationship to the charitable institution." *Thrasher v. Winand*, 389 S.E.2d 699, 701 (Va. 1990). In *Thrasher*, the plaintiff worked as a food vendor at a community festival, and was allegedly injured by the negligence of the festival, operated by a non-profit corporation whose articles of

---

[2] Further, the cases cited by the Fire Department are factually distinguishable. The charities involved, a historic church and a memorial, were specifically open to serve the public, and any visitors on the premises were thus beneficiaries of that charitable purpose. By contrast, the Fire Department exists to provide firefighting and rescue services to the community of Damascus, and its charitable purposes are therefore more targeted than that of a historic site intended to serve the public at large.

In its reply brief, the Fire Department cites several Virginia trial court opinions that are similarly distinguishable, as the plaintiffs in those cases were engaged in activities directly related to the organizations' charitable purposes at the time they were injured.

incorporation stated that its purpose was "to create a greater awareness and visibility of the community of Buchanan, Virginia and to organize, promote, finance and supervise an annual Spring Festival." *Id.* The court acknowledged the defendant's charitable purpose, but held that none of the vendors at the fair, including the plaintiff, were beneficiaries of that charitable purpose. The court reasoned that the vendors were encouraged to set up booths in order to sell their wares to the public, and that they contracted with the defendant and paid consideration in exchange for the right to participate. *Id.* Additionally, the court noted that the defendant could not rely on the possibility that the plaintiff might receive future charitable benefits, as "mere membership in a class eligible to receive future benefits, conditioned upon circumstances which might never occur, is too remote and speculative to be considered." *Id.* In short, the court concluded that the defendant's beneficiaries "were only those to whom its board of directors donated the proceeds of its fund-raising activities, a category to which [the plaintiff] did not belong." *Id.*

Similarly, in *Straley v. Urbanna Chamber of Commerce*, 413 S.E.2d 47 (Va. 1992), the court held that an attendee of an Oyster Festival who was struck in the eye by a piece of candy during a parade was not a beneficiary of the festival organizers, because she received "no pecuniary benefits from the funds generated by the festival or contributed . . . to any of [the defendant's] charities." *Id.* at 51.

Further, the plaintiff was not a resident of the community, and "[t]he relationship between the [defendant] and the plaintiff, a member of the public attending the festival, is too attenuated and indirect to classify her as a beneficiary." *Id*.

The facts of *Thrasher* and *Straley* are highly analogous. Like the food vendor in *Thrasher*, Councill did not receive any direct charitable benefits from the Fire Department in the form of firefighting or rescue services. Rather, she paid a fee in exchange for the right to participate in the Fire Department's bingo games. Because Councill was not a beneficiary of the Fire Department's charitable services, she "did not become a vicarious beneficiary" merely by participating in the Fire Department's fund raising activities. *Thrasher*, 389 S.E.2d at 701. Further, Councill was not a resident of Damascus at the time of the incident and the prospect that she would receive the Fire Department's charitable benefits in the future "is too remote and speculative to be considered." *Id*.; *see also Straley*, 413 S.E.2d at 50-51.

Because the plaintiff was not a beneficiary of the Fire Department's charitable purposes, but instead a "mere invitee to whom the defendant[] owed the duty of reasonable care," *Straley*, 413 S.E.2d at 51, the defendant is not entitled to charitable immunity. Therefore, it is **ORDERED** that the defendant's Motion for Summary Judgment (ECF No. 14) is DENIED.

ENTER: June 1, 2015

/s/ James P. Jones
United States District Judge